FILED
2014 Aug-08  PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **NANCY MAE FRICKE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 5:13-CV-00806-RDP** |
| | } | |
| **CAROLYN W. COLVIN, Acting** | } | |
| **Commissioner, Social Security** | } | |
| **Administration,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OF DECISION**

Plaintiff Nancy Mae Fricke brings this action pursuant to Title II of Section 205(g) and Title XVI of Section 1631(c)(3) of the Social Security Act, seeking review of the decision by the Administrative Law Judge, denying her claims for Disability Insurance Benefits and Supplemental Security Income. *See also,* 42 U.S.C. §§ 405(g) and 1383(c). (Tr. 65, 67, 120-123, 124-130). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the ALJ is due to be affirmed.

**I.      Proceedings Below**

On May 3, 2010, Plaintiff filed for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging that she became disabled on January 1, 2006.[1] (Tr. 65, 67, 120-30). Plaintiff's applications were denied initially on August 4, 2010 by the Social Security Administration. (Tr. 69-78). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ) on August 10, 2010. (Tr. 81-82).  Plaintiff's request was granted and a video hearing was held before ALJ Patrick R. Digby on September 21, 2011. (Tr. 26-56). In his

---

[1] During the hearing held on September 21, 2011, Plaintiff's disability onset date was amended to March 31, 2008. (Tr. 13, 46-47).

decision, dated November 2, 2011, the ALJ determined that Plaintiff had not been under a disability within the meaning of Section 1614(a)(3)(A) of the Social Security Act since May 3, 2010, the date her application was filed. (Tr. 8-25).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, (Tr. 1-4), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

Plaintiff was fifty years old at the time of the hearing and reported having a driver's license and a high school level of education along with secretarial training. (Tr. 120, 145). She has previous work experience as an office clerk. (Tr. 49). Plaintiff's duties as an office clerk mostly involved typing, answering phones, ordering materials, being a runner, and carrying paperwork. (Tr. 177). The company she previously worked for closed; however, she claims that she would not be working at the company even if it were open. (Tr. 49-50).

Plaintiff testified that she independently cares for her personal needs, drives a car independently, watches television, enjoys reading, spends time with others, counts her own change, uses a checkbook/money order, takes care of a pet, prepares meals, does laundry, and shops on her own. (Tr. 33, 34, 41-42, 47-48, 58, 154-160). She also mentioned that she lives with a roommate who helps her with the household chores. (Tr. 33-34).

Plaintiff further testified that she is unable to lift anything, frequently has to use the restroom, and has difficulty walking and sitting for long periods of time. (Tr. 37, 40, 66). Specifically, Plaintiff testified that she could walk thirty to forty feet at most and stand for less than five minutes. (Tr. 40-41). She reported that she has trouble climbing stairs, reaching, hearing, following instructions, getting along with others, lacks memory, and understanding. (Tr. 159). Additionally, she reported depression, suicidal thoughts, panic attacks, and tends to isolate herself by not leaving the house and not talking to anyone. (Tr. 43-45, 50-51, 68, 159). She

reports experiencing vision problems, dizziness, complications with her left knee having a squeezing sensation, blood clots in her legs, and an inability to concentrate. (Tr. 34-35, 39-40, 45, 50-51, 68, 144). Plaintiff noted that she suffers from hypertension, gastroesophageal reflux disease, a refractive error, high cholesterol, and difficulty bending and standing. (Tr. 58, 68, 144).

In 2005, Plaintiff sustained back injuries from a car accident and sought treatment from the Crestwood Medical Center. An examination of Plaintiff's back was conducted and it was indicated through computerized tomography that Plaintiff had degenerative changes in her cervical spine. (Tr. 253). Particularly, the computerized tomography demonstrated modest to moderate degenerative facet changes with a minor spurring and degenerative facet disease. (Tr. 253). This computerized tomography showed no evidence of a cervical fracture or disc herniation. (Tr. 253). An additional test pertaining to Plaintiff's pelvis further revealed no evidence of any fractures or abnormalities. (Tr. 254). Other medical tests related to Plaintiff's lumber spine and chest areas also revealed no abnormalities and were within normal limits. (Tr. 255-256).

Plaintiff has a history of left lower extremity pain and dysfunction due to vascular problems. In October 2005, Dr. Gary Gross, Plaintiff's treating vascular surgeon, examined Plaintiff's lower extremities and vascular problems. (Tr. 288-299). After being observed by Dr. Gross, Plaintiff underwent left lower extremity lesser saphenous vein excision and ligation surgery. (Tr. 234). Even upon undergoing this surgery, Dr. Gross diagnosed Plaintiff with a left lower extremity popliteal cyst. (Tr. 293-294). Records demonstrate that vein tests of Plaintiff's left lower extremity performed in June 2008 were within normal limits and there was no evidence of superficial or deep vein thrombosis. (Tr. 289). Later testing by Dr. Gross also

3

indicated that Plaintiff did not have any evidence of bone bruises, meniscal tears, and her medial and lateral collateral ligaments were normal. (Tr. 298). In relation to Plaintiff's mental health, Dr. Gross found Plaintiff had anxiety related to the death of her mother in June 2008. (Tr. 290).

Dr. Leonard Martinec, another of Plaintiff's treating physicians, noted on May 9, 2008 that she reported having symptoms of insomnia and was under tremendous stress due to three recent deaths in her family. (Tr. 378). Dr. Martinec noted that Plaintiff had been taking Effexor for depression for years and diagnosed her with anxiety and depression. (Tr. 378). He increased her dosage of Effexor and Xanax for anxiety. (Tr. 378). In June 2008, Dr. Martinec found Plaintiff was still experiencing anxiety and insomnia, and as a result, again increased her medication. (Tr. 377).

In May 2009, the record shows that Plaintiff again complained of pain in her lower extremities and sought treatment from Dr. Martinec. (Tr. 326-332). On May 14, 2009, Plaintiff was concerned she had a blood clot on the left leg and thigh, which was painful when she slept on her left side. (Tr. 373). Dr. Martinec found Plaintiff was tender over the left popliteal cyst. (Tr. 373). As a result, Dr. Martinec ordered labs, x-rays, and a Venous Doppler Study to rule out deep vein thrombosis. (Tr. 326-331). The Venous Doppler Study revealed no evidence of thrombosis affecting the deep venous system of the left lower extremity. (Tr. 330). Moreover, x-rays of Plaintiff's left hip were within normal limits and there was no significant degenerative change. (Tr. 331).

On July 4, 2009, Plaintiff was admitted to the Huntsville Hospital after apparently attempting suicide with a gun. (Tr. 301-368). She was diagnosed with social stress, depression, and alcohol intoxication. (Tr. 310). Even though Plaintiff was intoxicated, it was acknowledged that she was alert times three and displayed no signs of acute distress or obvious discomfort. (Tr.

305). She had a depressed affect, but responded appropriately to questions, and after her hospital admission, denied that she had tried to commit suicide, specifically stating that "she accidently discharged her gun, ha[d] no intent to kill herself, that she [was] fine" (Tr. 305, 321, 323). She further admitted that she was safe to go home and denied anything but chronic, mild depression, which she felt she could handle. (Tr. 323). Plaintiff was discharged in stable condition. (Tr. 323-324).

Plaintiff did not report any further depression or anxiety related symptoms until February 2010. Dr. Martinec noted on February 6, 2010 that Plaintiff was contemplating divorcing her husband and under more stress than usual. (Tr. 371). Dr. Martinec's treatment notes indicate that Plaintiff stated she was having suicidal thoughts. (Tr. 371). As a result, Dr. Martinec diagnosed Plaintiff as being depressed and referred her to a psychiatrist. (Tr. 371). However, nothing in the record shows that Plaintiff acted upon this referral, and she did not report any further symptoms of anxiety or depression until her visit with Dr. Martinec in April 2010. (Tr. 370, 388).

In July 2010, Doctors John Lary and Erin Smith conducted a consultative examination and prepared reports on Plaintiff at the request of the Social Security Administration. Specifically, on July 26, 2010, Dr. Erin Smith conducted a consultative psychological examination. At the outset, Dr. Smith's report has a disclaimer that acknowledges her assessment is largely "dependent upon the accuracy and reliability of information obtained from sources beyond the control of th[e] examiner." (Tr. 391). Plaintiff denied current suicidal and homicidal ideation and had good insight and judgment. (Tr. 392). Dr. Smith noted that Plaintiff's mood was depressed and her affect was anxious, she was alert and oriented to time, place, person, and situation, and her thought content and processes were within normal limits with no indications of auditory or visual hallucinations, bizarre mentation or abnormal fears or obsessions. (Tr. 392).

Dr. Smith also noted that Plaintiff had fair attention and concentration and determined that based upon Plaintiff's mental status examination, she has normal speech, good insight and judgment, average cognition, and intact recent and remote memory. (Tr. 393). Dr. Smith opined that Plaintiff will require assistance with her daily living and medical needs and assigned her a global assessment of functioning (GAF) score of 45, indicating serious symptoms or any serious impairment in social, occupational or school functioning. (Tr. 393). Dr. Smith's mental status examination indicated that Plaintiff's overall level of social and adaptive functioning and ability to maintain gainful full-time employment were severely impaired and diagnosed her with major depressive disorder, generalized anxiety disorder, and panic disorder without agoraphobia. (Tr. 393).

On July 29, 2010, Dr. Lary conducted a separate consultative examination report at the request of the Social Security Administration, where he diagnosed Plaintiff with a left popliteal cyst with mild tenderness, hypertension, gastroesophageal reflux disease, status post varicose vein stripping surgery, psychological complaints, and refractive error. (Tr. 409). Further, Dr. Lary opined that Plaintiff has the ability to sit, stand, walk, lift, carry, bend, squat, reach, see (needs glasses), hear, speak, understand, and her ability to manipulate small objects was unimpaired. (Tr. 409).

On July 30, 2010, Dr. Amy Cooper, a state agency psychological consultant, conducted a mental residual functional capacity assessment on Plaintiff. Dr. Cooper opined that Plaintiff has, at most, moderate limitations in functioning due to her depression and anxiety and that she could tolerate ordinary work pressures but should avoid excessive workloads, quick decision making, rapid changes, and multiple demands. (Tr. 445). Further, Plaintiff would be able to concentrate and attend to simple tasks for two hours; however, she will need customary rests and breaks and

a small number of familiar coworkers. (Tr. 445). He predicted that she may miss one or two days per month due to symptoms of her anxiety and depression, and interaction with the public should be casual and non-intensive. (Tr. 445).  Dr. Cooper further found that Plaintiff can understand and remember simple instructions and work procedures, but will have more difficulty with detailed instructions. (Tr. 445). Changes to Plaintiff's work environment or expectations should be introduced gradually and infrequently and she would be able to maintain a work pace consistent for the mental demands of competitive level work. (Tr. 445).

Near the end of Plaintiff's hearing, the ALJ posed a hypothetical question to Vocational Expert (VE) Martha Daniel. (Tr. 19, 52-53). The VE was asked to compare Plaintiff's residual function capacity with physical and mental demands of the work she performed in the past. (Tr. 19, 52-53). The VE testified that Plaintiff is not capable of performing her past work as an office clerk as generally performed in the national economy. (Tr. 53). The ALJ then posed a second hypothetical question, asking the VE whether jobs exist in the national economy for an individual with the claimant's age, education, RFC, and work experience. (Tr.  54). The VE reported that Plaintiff would be capable of performing the requirements of representative occupations such as garment operator, hand packager, and an assembler of small products. (Tr. 54).

Based on the testimony of Plaintiff, the VE, and the record, the ALJ found that there exists a significant number of jobs in the national economy that Plaintiff could perform, in conformance with the Medical-Vocational Guidelines provided at 20 C.F.R. § 404, Subpart P, Appendix 2, and therefore, Plaintiff is not disabled. (Tr. 21).

II.     **ALJ Decision**

Disability under the Act is determined under a five-step test.   20 C.F.R. § 404.1520.

First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.

20 C.F.R. § 404.1520(a)(4)(i).   "Substantial work activity" is work activity that involves doing

significant physical or mental activities.   20 C.F.R. § 404.1572(a).   "Gainful work activity" is

work that is done for pay or profit.   20 C.F.R. § 404.1572(b).   If the ALJ finds that the claimant

engages in substantial gainful activity, then the claimant cannot claim disability.   20 C.F.R. §

404.1520(b).     Second, the ALJ must determine whether the claimant has a medically

determinable impairment or a combination of medical impairments that significantly limits the

claimant's ability to perform basic work activities.   20 C.F.R. § 404.1520(a)(4)(ii).   Absent such

impairment, the claimant may not claim disability.   *Id.*   Third, the ALJ must determine whether

the claimant's impairment meets or medically equals the criteria of an impairment listed in 20

C.F.R. § 404, Subpart P, Appendix 1.   *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

If such criteria are met, the claimant is declared disabled.   20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under

the third step, the ALJ may still find disability under the next two steps of the analysis.   The ALJ

must first determine the claimant's residual functional capacity (RFC), which refers to the

claimant's ability to work despite her impairments.   20 C.F.R. § 404.1520(e).   In the fourth step,

the ALJ determines whether the claimant has the RFC to perform past relevant work.   20 C.F.R.

§ 404.1520(a)(4)(iv).   If the claimant is determined to be capable of performing past relevant

work, then the claimant is deemed not disabled.   *Id.*   If the ALJ finds the claimant unable to

perform past relevant work, then the analysis proceeds to the fifth and final step.   20 C.F.R. §

404.1520(a)(4)(v).   In the last part of the analysis, the ALJ must determine whether the claimant

is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 31, 2008, her amended onset date of disability, and had a combination of severe impairments consisting of a left popliteal cyst, a history of vein thrombosis in the left lower extremity status post lesser saphenous vein excision and ligation, degenerative changes of the cervical spine, a major depressive disorder, a generalized anxiety disorder, and a panic disorder without agoraphobia satisfying the second prong of the analysis, as set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 13-14). The ALJ determined that although Plaintiff has hypertension, hyperlipidemia, gastroesophogeal reflux disease, and a refractive error, the record shows that these conditions are either controlled or corrected and do not result in any work-related limitations. (Tr. 14). Therefore, these conditions were not "severe" impairments. (Tr. 14). With regard to the third prong, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ determined that all of these impairments, individually or in combination, are insufficient to qualify Plaintiff for disability. (Tr. 14-15).

First, the ALJ determined that Plaintiff's severe impairments were not of listing level severity. More specifically, it was held that Plaintiff's cervical degenerative changes did not

meet the listing level severity for spine disorders. (Tr. 14). To have listing level severity, a disorder of the spine requires a compromise of a nerve root or the spinal cord. Because Plaintiff has not demonstrated that the cervical changes resulted in compromise of a nerve root, the ALJ found that her cervical degenerative changes did not meet the listing level severity requirement. (Tr. 14).

Second, the ALJ determined that Plaintiff's ability to perform activities such as taking care of her dog, shopping on her own, independently caring for her personal needs, preparing meals, doing laundry, shopping in stores, reading, watching television, spending time with others, and driving a car independently as inconsistent with her allegations of disabling pain and mental dysfunction, and therefore, only caused moderate restrictions in her activities of daily living and social functioning. (Tr. 14). Third, Plaintiff had no more than a moderate difficulty in concentration, persistence, or pace and experienced no repeated episodes or evidence of decompensation due to any mental impairment. (Tr. 14). The ALJ further determined that Plaintiff's work history detracts from the credibility of her allegations of not being able to work, since the record indicates that Plaintiff stopped working because the company that employed her closed. (Tr. 18). As a result, the ALJ believed that Plaintiff's work history raised a question as to whether her current unemployment was actually due to medical impairment. (Tr. 18).

Finally, the ALJ noted significant gaps in Plaintiff's history of treatment. (Tr. 18). Particularly, the record showed numerous occasions on which Plaintiff did not specify any particular complaint of pain or mental dysfunction, which contrasts with the current claim of ongoing, disabling symptoms since her alleged onset date of disability. (Tr. 18). After considering the evidence of record, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, her

statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they were inconsistent with the RFC assessment. (Tr. 16). The ALJ further determined that Plaintiff had the RFC to perform light work, except she would be able to understand and remember simple instructions but not complex or detailed instructions; she can concentrate and attend simple tasks; tolerate ordinary work pressures but should avoid excessive workloads, quick decision making, rapid changes, and multiple demands; maintain work pace consistent with competitive work; should not have contact with the general public; and any changes in the workplace should be infrequent and gradually introduced. (Tr. 15).

At the concluding steps of the analysis, the ALJ found that Plaintiff is not capable of performing past relevant work as an office clerk. (Tr. 19). However, based on the two hypothetical questions posed to the VE, the ALJ determined that, taking into account Plaintiff's age, education, work experience, and RFC, she is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and found Plaintiff "not disabled." (Tr. 21). Accordingly, the ALJ found Plaintiff not disabled at any time from her alleged onset date through the date of the decision. (Tr. 21).

## II.      Plaintiff's Argument for Reversal

Plaintiff offers two arguments for reversal: (1) the ALJ's determination is in error because substantial evidence does not support his decision and improper legal standards were applied in denying her disability benefits, and (2) the ALJ improperly rejected the opinion of Dr. Smith, the ALJ's own consultative examiner.

## IV.      Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.    Discussion

After careful review, the court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching that decision. The court addresses each of Plaintiff's arguments below.

### A.    Substantial Evidence Does Support the ALJ's Decision and Proper Legal Standards Were Applied.

To determine whether a claimant is disabled, the five-step sequential evaluation process

must be employed as described in 20 C.F.R. §§ 404.1520, 416.920 and 42 U.S.C. § 423(d)(1)(A). Plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence relating to her mental impairments. (Doc. 9 at 7-15). The Commissioner's regulations state that when reviewing regulations and weighing the opinions of medical sources, an ALJ must consider any relevant evidence provided to support an opinion, particularly medical signs and laboratory findings, as well as any explanation a source provides for an opinion, the consistency of the opinion with the record as a whole, the specialization of the doctor, and any other factors. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6). The court concludes that the ALJ complied with these requirements.

The ALJ properly assessed Plaintiff's credibility when looking to the medical evidence related to her mental impairments. The ALJ considered the medical evidence and found that Dr. Martinec had referred Plaintiff to a psychiatrist in February 2010, but there was no evidence that Plaintiff ever followed up and sought mental health treatment. (Tr.17). The ALJ also properly determined that Plaintiff did not report any symptoms of anxiety or depression when she saw Dr. Martinec during her final visit in April 2010. (Tr. 17). In Plaintiff's July 2010 examination by Dr. Smith, Plaintiff reported no history of any mental health treatment. (Tr. 392). This is substantial evidence supporting the ALJ's findings that Plaintiff's mental symptoms were within normal limits.

The ALJ held that her work history detracts from her credibility with respect to her claim that she cannot work. (Tr. 18). He found that Plaintiff stopped working because the company she worked for closed, not because of any disabling impairment. The ALJ had sufficient grounds to

doubt Plaintiff's credibility as to whether her current unemployment was actually due to medical impairments.[2] (Tr. 18).

In addition, record evidence supports the ALJ's finding that there were several occasions where Plaintiff did not specify any definite complaint of pain or mental dysfunction.  Such a failure runs contrary to her claims of ongoing, disabling symptoms. (Tr. 18). Furthermore, Plaintiff reported being able to independently care for her personal needs, drive a car independently, watch television, enjoy reading, spend time with others, count her own change, use a checkbook/money order, take care of a pet, prepare meals, do laundry, and shop on her own. (Tr. 33, 34, 41-42, 47-48, 58, 154-160). When this evidence is considered, Plaintiff's capability to perform these activities is inconsistent with her allegations of disabling pain and mental dysfunction. Therefore, the ALJ properly held that this record evidence calls into question her credibility of her allegations. (Tr. 18).

Additionally, the ALJ's decision to discount the opinion of Dr. John Lary was supported by substantial evidence. (Tr. 404-414). First, Dr. Lary's findings of disability are both inconsistent with his own treatment notes and with the record evidence as a whole. (Tr. 404-414). Dr. Lary conducted a consultative examination report and diagnosed Plaintiff with a left popliteal cyst with mild tenderness, hypertension, gastroesophageal reflux disease, status post varicose vein stripping surgery, psychological complaints, and refractive error. (Tr. 409). Notwithstanding these conclusions, Dr. Lary opined that Plaintiff has the ability to sit, stand, walk, lift, carry, bend, squat, reach, see (needs glasses), hear, speak, understand, and her ability

---

[2] Plaintiff first reported an alleged onset date of January 1, 2006, and then specified that she in fact ceased working in February 2005 when the seasonal work she was doing ended, and then later specified an alleged onset date of May 3, 2010. (Tr. 120, 142, 144). Based on this evidence, the ALJ appropriately examined Plaintiff's credibility due to her inconsistent allegations surrounding when and why she ceased working, in addition to what period her alleged disabling impairment first stopped her from working.

to manipulate small objects was unimpaired. (Tr. 409). In light of this evidence, the ALJ correctly gave little weight to the opinion of Dr. Lary's examination of Plaintiff.

For these and other reasons, the court concludes that the ALJ's findings are supported by substantial evidence and, in making those findings, he correctly applied the law.

### B.  The ALJ Did Not Commit Error and Properly Rejected the Opinion of Dr. Smith, the ALJ's Own Consultative Examiner.

After careful analysis, the court concludes that Plaintiff's argument that the ALJ committed error by improperly rejecting the opinion of Dr. Erin Smith, the ALJ's own consultative examiner, is also without merit. (Doc 9 at 1-9). Plaintiff argues that the ALJ erred by giving little weight to Dr. Smith's psychological assessment and that the ALJ substituted his own opinion for the professional opinion of Dr. Smith. (Doc 9 at 1-11). Plaintiff further argues that the ALJ should have recontacted Dr. Smith for clarification of her assessment and that the ALJ's reliance on a non-examining State agency doctor's assessment was in error. (Doc 9 at 11-15). The Commissioner counters these assertions by noting that Dr. Smith's opinion did not merit weight because Dr. Smith "clearly" based his opinion on Plaintiff's physical limitations and that, as a psychologist, Dr. Smith is not qualified to assess physical conditions. (Tr. 19, Comm'r Mem. 8). The ALJ properly analyzed and weighed the medical opinions of Dr. Smith and the State agency doctor. (Tr. 18-19).

It is axiomatic that the testimony of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). *See also Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (quoting Lewis ); *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) ("'The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" (quoting *MacGregor v. Bowen*, 786 F.2d 1050,

1053 (11th Cir. 1986))). A similar preference for the opinions of treating physicians is found in the Commissioner's own regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. §§ 404.1527(d)(2), 404.1527(c)(3)-(6), and 416.927(c)(3)-(6).

Accordingly, an "ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. The Eleventh Circuit has held that the "good cause" necessary to reject a treating physician's opinion has been found in several instances, including when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips*, 357 F.3d at 1241.

Here, the ALJ correctly applied these legal requirements.  First, the ALJ explained his reasons for giving less weight to Dr. Smith's opinion — that opinion is entitled to little weight because it is inconsistent with her own medical findings. (Tr. 19). Dr. Smith's assessments concluded that Plaintiff's overall level of social and adaptive functioning appeared to be severely impaired secondary to her chronic medical issues and was diagnosed with Major Depressive Disorder, Generalized Anxiety Disorder, and Panic Disorder without Agoraphobia. (Tr. 393). Dr. Smith also opined that Plaintiff's "ability to maintain gainful full-time employment is severely impaired by her chronic medical conditions." (Tr. 393). Taking into consideration Dr. Smith's

overall assessment, the ALJ was correct in holding that Dr. Smith's assessments were at odds with her own mental status examination findings that Plaintiff had normal speech, normal response to questions, good insight and judgment, average cognition, and intact memory. (Tr. 392-393). Her assessment is rendered even more unreliable because Plaintiff was found capable of initiating and maintaining eye contact appropriately throughout the session, her thought content and processes were within normal limits, there were no indications of auditory or visual hallucinations, and she did not manifest any bizarre mentation or abnormal fears of obsessions. (Tr. 392). It was further noted that there were no signs of suicidal and homicidal ideation, and Plaintiff was alert and oriented to time, place, person, and situation. (Tr. 392). Dr. Smith's diagnosis is inconsistent with her own findings due to extensive evidence showing that Plaintiff's mental limitations were within normal limits. (Tr. 391-394). Therefore, the ALJ was correct in giving little weight to Dr. Smith's assessment, even though she is a treating physician.

In addition, properly understood, Dr. Smith's assessment that Plaintiff's ability to maintain full-time employment was severely impaired by her medical conditions and that her social and adaptive functioning was severely limited by her chronic medical issues were merely opinions regarding Plaintiff's limitations from physical impairments, not mental impairments. (Tr. 19). Herein, the ALJ properly determined that Dr. Smith is a psychologist, qualified to opine only to limitations related to mental impairment, not limitations related to physical impairment. (Tr. 19, 391).

Furthermore, the ALJ adequately noted that Dr. Smith's assessment was mostly based on Plaintiff's own reports of physical symptoms. (Tr. 19). Dr. Smith's assessment starts with a disclaimer that her assessment is based in part on material provided by the patient and then summarizes Plaintiff's physical complaints at length before determining that her physical

17

impairments limit her ability to work. (Tr. 391, 393). As a result, contrary to Plaintiff's argument, the ALJ did not substitute his own opinion for that of Dr. Smith, but was only reading the contents of Dr. Smith's own report in determining that it was not entitled to great weight. (Tr. 18-19, 391-394).

In *Wainwright v. Comm'r of Soc. Sec.*, No. 06-15638, 2007 WL 708971 (11th Cir. Mar. 9, 2007), the court concluded that the ALJ must "state with particularity that he [is] assigning substantial weight to the opinions of . . . state agency psychologists and clearly articulate his reasons for doing so," and these reasons must be "explicit, adequate, and supported by substantial evidence in the record." Here, the ALJ properly articulated his reasons for according little weight to the examining psychologist, Dr. Smith, and relying on Dr. Cooper's assessment. (Tr. 18-19). First, Plaintiff's own treating physician had not imposed any limitations on her mental capabilities; therefore, the ALJ correctly relied on Dr. Cooper's assessment to determine Plaintiff's mental functional limitations.  Second, the ALJ noted that Dr. Smith's opinion was less persuasive because it was (1) materially inconsistent with the record and, in fact, inconsistent with his own treatment notes, (2) unsupported by the medical evidence, and (3) appeared to be based primarily on Plaintiff's subjective reports and complaints. (Tr. 18-19, 391-394).  The ALJ's reasons are explicit, adequate, and supported by substantial evidence in the record.

Plaintiff's argument that the ALJ should have recontacted Dr. Smith is also without merit. (Doc. 9 at 11-12). Title 20 C.F.R. § 404.1512(e) requires the Social Security Administration (SSA) to:

> re-contact a medical source to obtain additional evidence or to seek clarification of evidence when the evidence received from that source "is inadequate for us to determine whether [the claimant] is disabled." 20 C.F.R. § 404.1512(e) (2006). Specifically, additional evidence or clarification must be sought from the medical

source "when the report from [the claimant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Id.* Such additional evidence or clarification may be obtained by the SSA requesting copies of the medical sources' records, obtaining a new or more detailed report from the medical source, or contacting the medical source by telephone. *Id.* Social Security Ruling 96–5p recapitulates the requirements of § 404.1512(e), and directs the ALJ to "make every reasonable effort to recontact [medical] sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear[.]"

There was no other information needed from Dr. Smith for the ALJ to make a decision as to Plaintiff's restrictions.  Even more importantly, obtaining a consultative examination, like the one completed by Dr. Smith, is one of the remedies when a medical record is insufficient. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3). There is also substantial evidence supporting the ALJ's determination that Plaintiff was not mentally disabled, and that decision was supported by other treating physicians, such as Dr. Martinec, and the physicians at Huntsville Hospital. (Tr. 301-368, 454). Therefore, the ALJ did not act as both judge and physician, so there was no need for additional information or clarification, and the record reflects that the duty to recontact did not arise here.

Lastly, Plaintiff's argument that the ALJ erred in relying on Dr. Cooper's assessment is off the mark.  (Doc. 9 at 12-13).  Specifically, Plaintiff argues that the ALJ erred by giving substantial weight to a non-examining state agency physician, such as Dr. Cooper, over the opinion of examining psychologists, Dr. Smith, and it follows that the ALJ's decision is not based on substantial evidence. (Doc. 9 at 13-15). However, State agency medical consultants are highly qualified psychologists who are also experts in Social Security disability evaluation. 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); Social Security Ruling 96-6p. The ALJ properly relied

on Dr. Cooper's assessment to determine Plaintiff's mental functional limitations. (Tr. 19, 415-445).

With regards to Dr. Cooper's assessment, the ALJ gave great weight to the opinion of this state agency psychological consultant, who found that Plaintiff had, at most, moderate limitations in functioning due to her depression and anxiety. (Tr. 19, 443-446). The ALJ considered Dr. Cooper's assessment and held that the assessment was well-supported by the medical evidence and consistent with the record as a whole. (Tr. 19). *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). "[G]enerally a treating doctor's opinion is entitled to more weight than that of a consulting doctor's." *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). However, it is not error for an ALJ to rely "on the opinion of a non-examining physician [if] th[e] opinion was consistent with the opinions of the examining physicians." *Edwards v. Sullivan*, 937 F.2d 580, 584-585 (11th Cir. 1991). In light of this, we look to whether Dr. Cooper's reports are consistent with the reports of other examining physicians who have given Plaintiff mental health treatment such as Dr. Gross, Dr. Martinec, and the psychiatric treatment conducted at the Huntsville Hospital. (Tr. 290-291, 301-368, 455). Moreover, if Dr. Cooper's assessment is inconsistent with the reports of other examining physicians who have given Plaintiff mental treatment, the case would be remanded. (Tr. 415-446).

Dr. Gross and Dr. Martinec both diagnosed Plaintiff as suffering from depression and anxiety during the period of May through June 2008. (Tr. 290-291, 455). On February 6, 2010, Dr. Martinec diagnosed Plaintiff as still being depressed and referred her to a psychiatrist. (Tr. 455). However, nothing in the record shows that Plaintiff acted upon that referral, and, in fact Plaintiff did not report any symptoms of anxiety or depression upon her final visit to Dr. Martinec on April 2010. (Tr. 370, 388, 455). As a result, Dr. Martinec and Dr. Gross' diagnosis

of Plaintiff's mental treatment correlate with Dr. Cooper's assessment that Plaintiff no longer complained of having any symptoms of depression or anxiety, and she did not seek further mental health treatment. (Tr. 290-291, 415-446, 451-476).

Plaintiff was also admitted and given mental health treatment at the Huntsville Hospital after attempting suicide with a gun. (Tr. 301-368). Plaintiff was diagnosed with social stress, depression, and alcohol intoxication. (Tr. 310). Even though Plaintiff was intoxicated, it was acknowledged that she was alert times three and displayed no signs of acute distress or obvious discomfort. (Tr. 305). Although she had a depressed affect, she responded appropriately to questions, and after her hospital admission, denied that she had tried to commit suicide. (Tr. 305, 321, 323). She specifically stated that she accidently discharged her gun, that she was fine, and had no intent to kill herself. (Tr. 321). She further admitted that she was safe to go home and denied anything but chronic, mild depression, which she felt she could handle. (Tr. 323). Plaintiff was discharged from the hospital the following day while in stable condition. (Tr. 323-324). This evidence correlates with Dr. Cooper's assessment that Plaintiff has, at most, moderate limitations in functioning due to her depression and anxiety. (Tr. 443-446).

As noted above, Dr. Smith's assessment is inconsistent with her own findings. She reported Plaintiff had fair attention and concentration, and her mental status examination showed Plaintiff had normal speech, normal response to questions, good insight and judgment, average cognition, and intact recent and remote memory. (Tr. 392). Dr. Smith further opined that Plaintiff was able to initiate and maintain eye contact appropriately throughout the session, her thought content and processes were within normal limits, there were no indications of auditory or visual hallucinations, and she did not manifest any bizarre mentation or abnormal fears of obsessions. (Tr. 392). There were no signs of suicidal and homicidal ideation and Plaintiff was alert and

oriented to time, place, person, and situation. (Tr. 392). Moreover, in Plaintiff's July 2010 examination by Dr. Smith, Plaintiff reported no history of any mental health treatment. (Tr. 392).

Dr. Smith found that Plaintiff's overall level of social and adaptive functioning appeared to be severely impaired.  Her findings for that particular diagnosis are predominantly consistent with Dr. Cooper's assessment. (Tr. 393). Dr. Smith's notes tend to show that Plaintiff's mental limitations were normal, evidence that actually supports Dr. Cooper's diagnosis that Plaintiff had, at most, moderate limitations in functioning due to her depression and anxiety. (Tr. 393, 443-446). Accordingly, it was proper for the ALJ to rely on Dr. Cooper's assessment because it was well-supported by medical evidence from other examining physicians, and consistent with the record as a whole. (Tr. 415-446).

## VI.     Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 8, 2014.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE